Next case is Secure Access v. Nintendo of America, 2015-1971, Mr. Billick, when you are ready. May it please the court. The district court below made three fundamental errors concerning the invention. The first error that it made is that it held that the TVA must be a detachable device. The second error that it made is that the TVA only provides a non-interactive link video signal. The third error that it made is that the TVA only works in analog conversion. Can I ask you, because you just focused on three things and I have a question about something you didn't mention, the ported source interpretation which says that the connection has to be to a video adapter or graphics accelerator card, so excluding other things like printer port, on the assumption, since you didn't mention it and you want to get back to the other things, suppose I were to agree that the district court were wrong on that and that alone, do you still have a non-infringement case that would warrant a remand? John, do you understand the question? I do. Correct me if I'm wrong, but Your Honor is asking if we correct the term… The ported source, but otherwise leave all of the other claim constructions in place, does that warrant remand or would you agree? I know you haven't yet agreed, but would you agree that you don't have an infringement case at that point? It would certainly make our infringement case much more difficult. We would essentially be forced to argue doctrine of equivalence as to the analog conversion aspects because… But this is not something we've presented the material with, so it's a question you either say no, we give it up, or yes, we want the opportunity. Yes, we would like the opportunity. Now I'm really confused because I understand your debate with the other side about the three terms that you don't raise, even though they were arguably encompassed within the stipulation. So put aside that portion of the stipulation. You concede that seven of the terms are determinative. Isn't that what you said? That is correct. So if we affirm on any one, there's no infringement, right? Well, it's very difficult in this case because these terms are interrelated. For instance, the TVA, translated video adapter claim, that imputes other terms which were also misconstrued by the case. For instance, the TVA brings in the term video output port, but then video output port was also incorrectly construed. So the reason why we brought these particular seven all together is because they, in essence, overlap. But any one of them, even to the extent that one might bleed into the other, but if any one of them is right and they bleed into the other, there's no harm, right? That is correct. And you didn't reserve DOE in your stipulation, right? I do not believe so. I do not know for certain if we reserve DOE. What we did reserve in the stipulation is we reserved the right to basically amend our case based on whatever happens here today. Now I think it's my turn to be confused. I thought you stipulated to one and only one thing. Given all of the claim constructions, you have no infringement case, that you have not stipulated to the absence of infringement if you change any one piece of it. Well, I think logically if you change any one piece, as Judge O'Malley outlined, if you change any one piece, yes, that would change our infringement analysis. I thought you answered, Judge O'Malley, the opposite of that. If we change the term ported source, that still does not solve the problem of which we have concerning the analog conversion, and it does not solve the problem of two-way communication. So if, for instance, if this court only rules that ported source was improperly construed, that solves the issue of detachability. That solves the issue of whether or not the invention must be separate from the computer. But that does not solve the problem of the two-way communication if the translated video adapter works in two-way communication. And that also does not solve the problem of whether or not the TVA works in purely digital embodiments. So if there's a way to construe a ported source that would solve those problems, then absolutely. Then we'd still be able to make our infringement case if we solve the ported source term. So getting back to the three fundamental issues, when the district court ruled that it must be separate, it's the classic claim construction issue that happens often. The district court read in preferred embodiments from the patent into the claims. In so doing, in certain circumstances, it actually read in limitations from dependent claims back into the independent claims. For example, Claim 9 is the only independent claim that expressly provides for interfacing with the video output port. Whereas Claim 1 describes more generally looking for a ported source, as does Claim 13. So when the district court, in construing the TVA term, said that it must come from the video output port, the video signal must come from the video output port, that would work with Claim 9. But that doesn't work with the other independent claims, Claim 1 and 13. On the interactive or unidirectional claim construction, I think that the district court interpreted its own construction to mean that the video signals move in one direction only, not that there is no other bidirectional signal. Is that how you read the construction? That is correct. Our concern, you are correct in that it is pertaining to the video signal. It's very, very clear that Mr. Webber, in the prosecution history, he did disclaim video signals heading backwards. When discussing the Obata reference in the prosecution history, one analogy would be Obata was solving the problem of how do you get video signals going from terminal to terminal. Imagine terminals as the distal lens on the spokes on a wheel, communicating around the circumference. That's what Obata teaches. What Mr. Webber is teaching is essentially communication going back from the hub, the distal lens of that same spoke. So there's no video signal communication from A to B within Webber, but there is in Obata. And our concern with the district court's reading of Obata is, you know, our concern is that it's going to provide for no interactivity. And we're very worried down the road for a lack of written description problem. Because as soon as you remove all interactivity within this circuit, the invention doesn't work. You need to have some sort of acknowledgment signals that go backwards coming from— But that's why I guess I asked the question. I took it that—just correct me if I'm wrong—that the way this debate was shaping up was that if you distinguish different kinds of signals in asking can there be bidirectional movement, then the disclaimer is pretty darn strong on no bidirectional video signals. It is equally clear within the specification that there can be some signals bidirectional, what you—I think your specification referred to as handshakes. Correct. Or control signals that say, okay, we've got a working line now or something. But that if the claim construction is understood as I understood it and I think you agreed to mean what can't be bidirectional is only video signal movement, not the other stuff, then pointing to the handshaking just doesn't—isn't a ground for disagreeing with the district court's claim construction on that. I guess— That is correct. And so the main bone of contention that we have with this construction is the imputation of a non-interactive link. That's what we're sort of focusing on. And I understand that it goes on to qualify that of the process video signal. But given the other errors made in that construction where the district court imputed the limitation of the video output port and accessory device, we were just concerned that the district court believed that there's no interactivity whatsoever. So you are correct in that, yes, the video signal does not go backwards. That's Obama. Weber clearly describes handshaking signals and interactivity and timing throughout the 309 patent. So I believe that's the proper distinction from Obama. But our issue, again, was the notion of interactivity. But, again, the biggest problem is the notion that the translated video adapter must be detached, and that's simply not the case. When you say it's the biggest problem, in your view, would that one be determinative? Yes, it would because there's no dispute that the TVA can be added to an existing computer system. However, in column 13, lines 48 to 57 of the 309 patent, Mr. Weber makes it very, very clear that what he's patenting is a method. And he said that it can be installed on later microprocessor-based motherboard hardware. So he understood what exactly he was doing. What he was able to demonstrate in order to provide some sort of support for this method is, look, I have these components. I can assemble them in such a way that they operate functionally distinct from the main computer. But he makes it very, very clear throughout the patent and in the claims themselves that this is a method that can be used in such a way, so long as it is functionally distinct from the main video processing and the main data processing of the computer. Mr. Bill, if you wanted to save some rebuttal time, we're into that period.  Mr. Smith. May it please the Court, Stephen Smith on behalf of the Nintendo Appellees. And, Your Honor, I'd like to begin with respect to your question about which of the claim terms are dispositive before, Your Honor. I think Secure Access makes quite clear on page 6 of their reply brief that's, quote, Secure Access properly raised on appeal only the seven claim terms that would be case dispositive. But your friend on the other side is arguing today that they're only case dispositive if you consider them all together, except perhaps the TVA being a separate and distinct. Well, I appreciate the argument, Your Honor. But in the reply brief, we believe they made clear that all seven independently were case dispositive. So this is the first time we're hearing that. Can you show me that? I mean, I must say I find this just… Page 6. Page 6 of the reply brief. Where do they say, if we're wrong about any one of these, affirm? Do they say that exact language, Your Honor? No, in substance. No, they don't. Where do they say that in substance? The top of the page where it says Secure Access properly raised on appeal only the seven claim terms that would be case dispositive. What am I looking at? This is their reply brief, Your Honor, page 6. Only the seven claims that would be case dispositive. And what do you think that means? I wrote that, Your Honor, as individually each of the claim terms that they're appealing or they believe are case dispositive. For example… See, I took that to mean we have something to proceed on on a remand if we win on any one of them. I appreciate that, Your Honor. We read it differently. We read it as all seven of them independently. So this is what I would take it to be, at best, ambiguous statement. They never say anything like that in the stipulation or anywhere else. That's going to be a waiver of their right to win on, say, six of the seven if they lose on one. No, I understand that, Your Honor. I think that's one interpretation of that language. We looked at it differently. But more to the point, though, if we step back and actually look at the claim constructions, what the district court went through. Here we have a fairly uncommon situation. Can you address the ported source one, which, if I remember right, you address in footnote 7 on page 26 of your red brief? Sure, Your Honor. And I don't understand that footnote, which I think is the only place you address it. The ported source, Your Honor, comes right from the claim language itself of Claim 1. And Claim 1 speaks specifically about processing computer program data into a ported source of display-ready first-process video data signal. I'm reading from Column 24, A74. This is Claim 1. And clearly the specification talks about where you can get this ported source of display-ready video. It's the video adapter in the graphics card, Your Honor. And does the specification say you can get this from those places only and from nowhere else, like the printer port? The processed ported source of display-ready first-process video data signal, yes, Your Honor, with respect to first-process video data signal, as opposed to printer data. So the ported source here, Your Honor, is limited to the processed video data signal, as opposed to where there's dependent claims that talk about the issue of printer data. And that's the distinction. And, Your Honor, moving to the term TVA, which is one of the central disputes between the parties here today. This is a relatively uncommon situation where we have a coin term. It has no plain and ordinary meaning. The inventor himself prosecuted and wrote this patent. And he left no doubt what the TVA was. And there were several components to that. First, that it was an accessory device added to an existing computer. And this is a very central point of the invention for TVA. And that is there's two embodiments that really give life and breath to TVA. That's Figure 16 and 17. One's an external embodiment that is hooked up into the video output port. The other one's an internal card that slips into or fits into the expansion bus slot. And in both of those situations, they're add-ons. Why did they want it to be add-on devices? Well, the inventor wanted the TVA to operate absolutely independently from any hardware configurations. For example, Apple or IBM wanted the TVA to operate independently from any operating system constraints. And so clearly every embodiment in the patent where they talk about TVA is a detachable device. And this isn't a situation where we're applying plain and ordinary meaning to one skilled in the art. This is where the inventor himself coined the term. There's no dispute that it's a coin term. And as Your Honors, we're, the MyMail and the Goldenberg case stand for the proposition that where you coin a term, we have to look to the specification to give life and full force and effect to the definition. And critically here, I think Goldenberg has a brief explanation that where it is a coin term, it is incumbent, there's a requirement on the inventor to be precise because we can't step outside the patent and rely upon one of ordinary skill in the art because the term just doesn't exist in the art. So we have to rely on the specification. I've got to bring you back to what to me has been my focus here. So look at, I guess, Column 20. Well, actually, I guess it's Claim 8. Does not Claim 8 talk expressly about accessing the TVA input port through the computer's printer data signal output port? And then what's happening there is that something that is about to be a video signal that's displayed is coming out the printer output port, right? Well, Your Honor, we look at Claim 8 as adding additional functionality to the TVA, that you can take the TVA and the TVA could be used with printer ports and serial ports in the printer, the serial and the parallel ports. For example, if you look at Claims 19 and 20, it's sort of the same thing Your Honor is driving at. And so you think that this piece of Claim 8 does not refer to a ported source, even though it is a port through which the TVA is getting the signal that it's going to display? Oh, I think I understand you now, Your Honor. This refers to accessing the TVA input port through the – that's the input port to the TVA itself. The TVA, and there's the computer, and there's got to be some connection, the input port going into the TVA. And here in Claim 8, it's coming out of the printer port, isn't it? Correct. Right. So how is that printer port not a ported source? Oh, it's not a – oh, I understand your point, Your Honor. It is a source of printer data. It's not a ported source of, as the claim requires, display-ready, first-process video data signal. So it's a printer data, and if we see that in Claims 19 and 20, for example, they talk about the data is ASCII or binary. It's in a different format coming out of a printer port than it is coming out of a video input port. So the distinction between – and the inventor is clear about this – there's a distinction between the different kinds of data coming through. So, Your Honor, for example, on Claim 8, absolutely, you could hook the TVA up to the printer port. Absolutely, we're not making that argument that you cannot. What we're saying with respect to Claim 1, it talks about the display-ready, finished, processed video data, not the printer. And that's the distinction, Your Honor. So the ported source, as used in the express definition, has that requirement of being display-ready, processed video data. And if we look at the specifications, it's in accord. When the inventor is talking about ported sources of – or sources of – printer data, they make clear that figures 12 and 13, for example, serial and parallel printer ports. And it's a different kind of data coming out. And therefore, different kind of hardware is necessary and different kind of functionality is necessary as well. And one other point I would like to raise with my existing time, and this is on the port terms. The district court here – let me just step back for a moment. The district court wrote a 30-page opinion chock full of sites of the intrinsic record, reviewed every single one of the arguments that Secure made, and addressed those in detailed fashion in a well-reasoned opinion. And the issue we wanted to raise on port, the port terms, Your Honor, is very straightforward, and that is that the term never appears in the asserted claims independently. It's always modified, whether it's TVA input port, video input port – or output port, excuse me. It never appears in isolation. What they're trying to do is to construe the term in isolation, which would be very broad and would be inappropriate given the specific claim language. And so we think the district court was right. Addressing this issue how they did, their citations to the record, we believe are absolutely correct. And therefore, we think the district court across the board on every term was accurate and did not commit error. And unless there's any more questions, Your Honor, I will cede the remaining amount of my time. Thank you, Mr. Smith. No one ever gets penalized for not using all their time. Thank you, Your Honor. I appreciate that. Mr. Billick has some rebuttal time. Thank you. To Mr. Smith's last point concerning the port terms, he's absolutely right that port is never used in isolation. But it's a bit of a cute argument to say it's never used in argument – it's never used in isolation because he's essentially taking the surrounding language around port and trying to reconstrue port to complicate the reading of the TVA. So our position was and is it's a fairly plain, broad reading of the term port because it is surrounded by modifying adjectives and modifying words. So port can be construed as it's known in the art, and we can just leave all the other TVA input port issues or terms alone. Now, as Judge Taranto was saying earlier concerning Claim 8, if we are to take the district court's construction on TVA as it is, that's going to read out Claim 8. That's going to ignore the fact that the TVA can accept video data from any ported source, which includes a printer port. So it's not – In Claim 8 and in I guess around column 8, lines 11 through 15, is the printer port a gateway through which processed video signals are moving or some other kind of signal? Which I took it to be your friend's explanation for why the Claim 8 really doesn't undermine the district court's claim construction, limiting the ported source to a video adapter or graphics accelerator card. You hit the issue right on the head. There's a very important distinction between the processed video signal and the processed video data signal. Processed video signal is claimed in Claim 9. Processed video data signal is described in Claim 1. The processed video data signal – What about Claim 8? What's going on in Claim 8? What signal is moving through the computer's printer port? A printer – what is the computer's printer data signal output port? What's moving through there? Very plainly, as it says right there, it's a printer data signal. And is that a type of first processed video data signal or not? Yes, it is. How do we know that? Because – I took it again. Your friend on the opposite side was, as I'm understanding, and I could be misunderstanding it, was answering my question about Claim 8 by saying different signal. So it doesn't matter that the different signal is coming out of something other than the video adapter or graphics accelerator card because the claim construction applies only to the video, the first processed video or the processed video data signal. Well, the reason – and I believe I'm over my time. If I may answer. You can answer the question now. Thank you. How we know that video data signal is sort of an umbrella term is just simple claim differentiation. You have a broad term within Claim 1 that describes a sort of genus of types of video data signals that come out. And then you have a subsequent species under that genus of the type of video data signal. In this case with Claim 8, it would be the printer data. And elsewhere in the patent, Mr. Weber describes taking in that printer data and then reading it out as something that is video data that can be displayed on the secondary display. And if there are no other questions, I'd like to thank you for your time. Thank you.